The opinion of the court was delivered by
Duncan, J.
This was an action against the defendant, drawer *235 of a promissory note, made payable to Walker & George, at the Bank of Montgomery county, and by them indorsed to that Bank.
The defence setup was, that the defendant had only lent his name to accommodate Walker & George, without any other consideration than their bond given to him'ori the same day, and for the same sum; that Enoch Walker, one of the indorsers, was a director of the bank; that the note was drawn as a nóte of business, and was presented to the board of directors, in the manner in which it was written, and discounted by the board accordingly. Nothing yvas said of its being an accommodation note at the time it was discounted. The note was indorsed by Walker & George to the Bank, who paid the full value. The note was renewed several times; at length the defendant informed Walker & George, that he would renew it no longer, of which they informed the bank. The last note remained in the Bank for upwards of a year unrenewed, and until a few weeks before the indorsers made a general assignment to their creditors. They continued to pay the regular discounts, as if the note had been renewed. The. cashier of the Bank informed them, that it would be proper to have the note renewed by Thomas Walker, to which they replied, that it was unnecessary, as Thomas Walker was the drawer. Thomas Walker had not any notice of the non-payment, until he was called on to renew it, before their assignment. The bond still remained in Thomas’s hands unpaid, nor has he demanded payment.
The defendant contended, that by the Bank’s not giving notice to Thomas Walker of the non-payment, and receiving the interest or discount as if the note had been renewed, by this delay and giving of time.to the indorsers, the defendant was discharged, as he stood only in the situation of a surety; and was not the primary debtor.-
To make out this defence, Enoch Walker and Thomas George, the indorsers, were offered as witnesses. An objection was made to their competency, as being parties to this negotiable instrument, and, therefore,' excluded, by the policy of the law, from giving evidence to impeach it, and because they were interested. The court admittted them, and a bill of exceptions was taken. The court charged the jury in favour of the defendant,' in substance -stating, “ that the material point for the consideration of the jury was, whether when the note, became due, or about that time, and when the arrangement was made, accepting from the indor-sers the discount, without the knowledge of- the defendant, the Bank knew it to be an accommodation note, no matter from which source they received the information; and if the jury So found, this in point of law was a discharge of the defendant. .For the Bank stood in the situation of creditors, having Walker & George as the principal debtors, and Thomas Walker, the defendant, as their surety, and it was not then to be determined on the principles regulating negotiable notes, but on those regulating the relation of *236 debtors, as principal and sureties.” And to this charge the plaintiffs excepted.. Our attention is first called to the inquiry, whether, admitting the allegation of the defendant, if proved, to be a defence in the action, the indorsers were competent witnesses to prove it, either on the ground of general policy, or legal incompetency from interest in the event of the action. The principle in the case of Walton v. Shelly, that a party to a negotiable instrument shall not be allowed to give evidence to invalidate it, has been recognised too frequently and too solemnly, now to be departed from, and though the objection has been confined within very narrow limits by subsequent decisions in England, yet it has not been shaken in this court, but has been restrained to negotiable instruments, properly so called, and negotiated in the ordinary course of business before due. Pleasants v. Pleasants, 2 Dall. 196. Baring v. Shippen, 2 Binn. 154. M‘Ferran v. Powers, 1 Serg. & Rawle, 102. and 4 Serg. & Rawle, 397. Baird v. Cochran. This objection would not now prevail in England: for in Jones v. Brooke, 4 Taunt. 464, it was decided, that in an action against the acceptor of a bill for the accommodation of the drawer, the drawer would not be rejected on that ground; that it is now the practice, to receive persons whose names are on the bills of exchange to impeach them, though the witness was rejected on the second ground taken here, his incompetency on account of interest.
The witnesses here were offered to prove, what in contemplation of law was fraud on the plaintiffs committed by them in giving currency to this note, by their names, as a note of business. In the case of Fenturn v. Pocock, 5 Taunt. 192, 1 Serg. & Lowb. 72, it was declared, that whoever draws an accommodation bill, and procures another to accept it, and negotiates it without letting the person know to .whom he passes it, is guilty of a gross fraud. The law of this state is, that though a party to such paper may be received to prove subsequent facts, to discharge the note, yet he shall not be received as a witness to show that it was in truth and in fact not what the instrument it purported on its face to be; in other words,- he shall not be permitted to impeach it, or to prove it to be other than the paper itself states; and such was the decision of the court in Baird v. Cochran, 4 Serg. & Rawle, 397.
For this reason, it is the opinion of the court, these indorsers were not competent witnesses, as their evidence tended to show, that the note, was different from what it represented itself to be, the condition of the parties to it reversed, and their liabilities different; and because the evidence went to show a fraud committed on the in-' dorsee, as to the foundation and origin of the instrument in its creation, and a fraud in passing it to them, and shall not be received to impeach that which they gave currency to by their names.
But were they incompetent witnesses, because they were interested? It is true, they would be equally liable to the plaintiffs and *237 defendant for the debt and interest: but, if Thomas Walker is cast in this action, he could recover from them, not only that amount, but all his costs and expenses in the action: whereas, if the Bank is cast, only the amount of debt and interest, and not the costs of this action could be recovered by the Bank from them: and whether this liability for costs makes any difference, destroys the equilibrium of interest in the event, is the question.
There has been diversity of opinion and decisions; for in Ilderton v. Atkinson, 7 T.R. 480, and Birt v. Kershaw, 2 East. 458, it was decided, that an indorser on a note, who has received the money from the drawer, in an action by the indorsee against him, may be admitted to prove payment of the note, being either way liable on the note; if the action was defeated, to the plaintiffon the note, or to the defendant in an action for not indemnifying, if the action succeeded, and his being liable in the latter case to compensate the defendant for the costs accrued in the action by such non payment, made no difference. But in Jones v. Brook, 4 Taunt. 464, in action against the acceptor of a bill, accepted for the accommodation of the drawer, the drawer was held not a competent witness, to prove the holder came to the bill on a. usurious consideration, because he does not standin-differently both to the holder and acceptor; for the holder can only recover against him the contents of the bill; but the acceptor is entitled to recover both the amount of the bill, and all the damages he may have sustained, including the costs of the action against ■him. And Phillips in his Treatise on Evidence, 47, considers the law now so settled, and indeed, it is consistent with common sense, and the inflexible rule of evidence, that interest in the event of the ■ suit disqualifies. But if the bond given to Walker, was a bond of indemnity, it certainly is adding to the quantum of damages the amount of the costs. In Cowles v. Wilcox, 4 Day. 108, in an action against the indorser of a promissory note, the maker, for whose accommodation the defendant indorsed the note, and who had exe- . cuted a mortgage to. the defendant as. security, was held to be an inadmissible witness for the defendant, to support the defence, being interested in the defence óf the suit. The ground of defence here,’ and in accordance with that was the opinion of the court, was, that the case must not be determined on principles regulating negotiable instruments, but the relation of debtors, principal and su-rities; that Walker was only the surety, and 'Walker & George the principals. If so, then Riddle v. Moss, 7 Crunch, 306, decides that question. For it was determined, that the principal obligor in a bond, is not a competent witness for the surety in an action on that bond, the principal being liable to the surety for costs, in case the judgment should be against him. The principal’s liability would be increased to the extent of the costs of the suit. On the objection to the witnesses’ competency on account of their interest, they should have been rejected.
But admit they were competent, and the defendant had fully *238 proved his allegation, and it is but justice to say, that the testimony appears to have been very candidly given, and to bear the impress of truth, did that discharge him in point of law ? I think not. There is one circumstance, and that not an unimportant one, which distinguishes this from all the cases that the counsel for the defendant has relied on. The. defendant took for security his bond of indemnity, when he gave this note to Walker & George; the bond was .given in exchange for the note ; he retains this security, and though it may be but a slender one, he thought it sufficient when he accepted it. But dismissing that consideration, how stands it, on the instrument, and on the indorsement? The drawer of a promissory note, and the acceptor of a bill of exchange, stand, in the same situation. The acceptor of the bill, and the drawer of the note, are in the light of principals, the indorsers of securities. .On the face of the instrument Thomas Walker was the principal, Walker & George the securities, when they indorsed it; T. Walker the primary debtor, Walker & George collaterals. When the note was indorsed, it passed into the defendants hands, as a business note; it was drawn in that form: it was negotiated in that form ; it assumed that shape to serve the purpose of Walker & George. No communication to the bank when they discounted and paid the money to Walker & George, that it was an accommodation note. The respective rights and liabilities of the parties, taking the note by what it represented itself to be, were then fixed. It is clear, that nothing but satisfaction of the debt, or absolute renunciation of it, could discharge the drawer. Time given to the drawer, might discharge the indorser. Notice of, non-payment not being given to him might have the same effect: but time given to the indorser could not discharge the drawer. Notice of non payment by the in-dorser was not necessary; it was his business to look to the payment. Laxton v. Peat, 2 Campb. 185, to which the defendant in error has clung, will afford him no sanctuary; for that was decided on the very principle, that when the indorsement was made, the indorser knew it was without consideration. It was within the knowledge of all the parties, that the bill was an accommodation bill, and the acceptor security only;, but here all is the reverse. But that nisi prius decision has been abandoned, overruled, and considered-.to be one of the very few mistakes made by Lord Eelen-bohough, at nisi prius. Fentum v. Pocock, 5 Taunt. 192. I Serg. & Rawle, Ab. 72. I, Marshall’s Rep. 14. And in that case, that the error might be done away, the court took pains to put the matter to rest, and to settle the law on some firm basis. That decision was, that if the holder of a bill of exchange, accepted for accommodation of drawer, takes a cognovit from the drawer payable by instalments, that does not discharge the acceptor; and that it would subvert and pervert the situation of the parties, to make the acceptor merely a surety. Here the person taking it did not know that it was an accommodation bill; and if he did not then know it, *239 what does it signify what came to his knowledge afterwards, if he took the bill for a valuable consideration? But Chief Justice Mans* field said, it was better not to rest the case on that foundation, for it appeared to him, that if the holder had known in the clearest manner, at the time of taking it, it was an accommodation bill, it would make no manner of difference; for he who accepts a bill, whether for value, or to serve a friend', makes himself liable at all events as acceptor, and nothing can discharge him but payment, or a release. And to this, Heath, Justice added, denying the authority of Lord Ellenborouh’s decision in Campbell’s Reports, whoever draws an accommodation bill, and procures another to accept it, and negotiates it without letting the person know to whom he passes it, that it is an accommodation bill, is guilty of a gross fraud, and the holder shall not bfe in a worse situation for the fraud practised on him. And in 5 Taunt. 551. 1 Serg. & Rawle, 184. 1 Marsh. 207. Carstairs v. Rolleston. If A. gives B., without consideration, a promissory note, to be negotiated by B. as a security for money, and the indorsee for a valuable consideration, without notice, releases B. from the note, and all claim on it, this does not so extinguish the consideration of the note, but that the indorsee may still recover against the maker: but the court would give no opinion, what might be the case on a note, where the holder originally had notice it was given without consideration: arid Chitty in his Treatise on Bills, (Judge Story’s Ed. 312,) says, that the case of Fentum v Pocock, is now the settled doctrine. Judge Stoby has subjoined, in a note, all the cases on the subject. These clearly establish, that in this respect there -is no distinction between bills and notes in the ordinary course of business, and accommodation paper. Lord Chancellor Eldon speaks of the decision in Fentum v. Pocock, with entire approbation: he observes, the principle, with a view to the benefit of commercial intercourse, is a very wholesome one: you will not inquire into the knowledge of the parties, but all shall be taken according to the natural effect of the bill, as appears on the face of it, and never to hold that the acceptor was not first liable. 6 Dow, 287.
Laxton v. Peat, is the only case in which it was ever held, that time given to the drawer discharged the acceptor, even on an accommodation bill, and against this solitary decision at Nisi Prius, we have the union of sentiment, and decision of Chief Justice Mansfield, Justices Gibbs and Heath, Lord Chancellor Eldon, and all the Barons of- the Exchequer, and Chambre, J. Time given, by an indorser to payee does not discharge the drawer. Claridge v. Dalton, 4 M. & S. 226.
But m addition to all these authorities, we have the case almost literatim decided. For in Perfect v. Musgrave, where the holder of a note drawn by two jointly, received a compensation of 10 shillings in the pound, from one of the makers, held that the other, although he had entered into the note as a mere surety, and which *240 was understood at the time, was not discharged by the receipt of such composition, or by the want of early application to him when the note became due. 6 Price’s Ex. Rep. 111.
The court cannot listen to the suggestion so pathetically urged on their attention, that T. Walker was not a man of business, or mercantile knowledge, and unacquainted with the legal consequences of what he did. The law knows no standard by which to measure the size of men’s understanding but one, and that is, had the party reason and understanding sufficient to enter into any binding contract: if he had, he is bound by its legal consequences.
Great perils always environ the man who meddles with accommodation paper. It is always attended with trouble: frequently with risk to him who lends his name. The man who, to serve his friend lends his name, as his debtor, in order that he may obtain money on that evidence of debt,cannot complain of it as a grievance, that when this purpose is answered, the law will consider him just in the character he has assumed. If drawer, to be treated as drawer; if indorser, as indorser. As he chose to be introduced into the world by the name and in the character of drawer, he must be content to pass through in all its stages under that name, and he cannot, at his pleasure, cast it off, and deny it to any who has given credit to the paper on his assumed-name and character. To such person he is bound by every obligation of justice and morality, to sustain the character he has held himself out to be. He shall not he permitted to allege that this was an imposition, to which he gave his name, nor to gainsay its reality by proof, that it was a fiction. There is in equity an estoppel much more conscientious than many legal estoppels, and this is an estoppel of that kind. Fictions in law are only permitted fo support the justice and truth of the case, but are never permitted to prevail against justice and against truth. It never can be a just defence, or an equitable bar to a claim, when the very foundation of the defence is, in reality, the substantiation of a falsehood, of which the author seeks to take advantage, and to relieve himself from his own obligation, and for which the holder has bona fide paid the full value. It shall be taken pro veritate, that he was the drawer, for de veritate, that was the very thing he was intended to be. He gave his note, payable to his friends, to enable them to raise money on the security of his name as a drawer at the bank, for the note is payable there, and when it has served that purpose, it cannot be endured that he shall say, he was not the drawer.
But here T. Walker knew the consequences, and took his security. But whether he did, or did not, matters not; the contract is not impeached on the weakness of his understanding.
The charge-of the court was, therefore, erroneous. The cause was to be decided on the principle of the instrument being negotiable and negotiated, and the acts of the Bank did not discharge T. Walker the drawer, neither the acts of omission or commission. *241 They omitted nothing. This bank was not bound to give him notice of non payment of his own note. Nor did the time given to the payees, nor the receipt of interest from them release the defendant from his obligation as drawer.
Judgment reversed, and venire facias de novo awarded.